# EXHIBIT 1

***EFILED***
Case Number 2020L 000622
Date: 5/1/2020 5:37 PM
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

## IN THE CIRCUIT COURT
## THIRD JUDICIAL CIRCUIT
## MADISON COUNTY, ILLINOIS

GEM CITY FRESH-MEX, INC.

d/b/a QDOBA

3490 Timberline Drive

Quincy, IL  62305, and

GEM CITY CUSTARD, INC.

d/b/a CULVERS

3490 Timberline Drive

Quincy, IL  62305, and

On Behalf of Themselves and All Others

Similarly Situated,

        Plaintiffs,

   v.

SOCIETY   INSURANCE,   A   MUTUAL

COMPANY,

c/o Registered Agent: William Bunzel,

150 Camelot Dr.,

Fond Du Lac, Wisconsin 54935,

        Defendant.

Case No.:

2020L 000622

---

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

NOW COME the plaintiffs, Gem City Fresh-Mex, Inc. dba Qdoba, and Gem City

Custard, Inc. dba Culver's and on behalf of themselves and all others similarly situated

(hereinafter "Plaintiffs"), by and through their attorneys, TORHOERMAN LAW, LLC, WRIGHT

& SCHULTE, LLC, HILLIARD MARTINEZ GONZALES LLP, AND URBAN & TAYLOR, and for their Complaint, allege as follows:

## INTRODUCTION

1.     Plaintiffs are owners and operators of bars and restaurants in Illinois who have been forced, by recent orders issued by the State of Illinois and Governor J.B. Pritzker, to cease their operations – through no fault of their own – as part of the State's efforts to slow the spread of the COVID-19 global pandemic.  The closures mandated by these orders present an existential threat to these small, local businesses that employ hundreds of residents.

2.     To protect their business from situations like these, which threaten their livelihoods based on factors wholly outside of their control, Plaintiffs obtained business interruption insurance from Society Insurance, A Mutual Company ("Society Insurance").  In breach of its insurance obligations that it voluntarily undertook in exchange for Plaintiffs' premium payments, Society Insurance denied Plaintiffs' claims arising from the State-ordered interruption of their businesses.

3.     This case challenges the practice of Defendant Society Insurance's processing of claims arising from the State-ordered interruption of Plaintiff's businesses, which insurance policies provide coverage for losses incurred due to a "necessary suspension" of the operations, including when their businesses are forced to close due to a government order.

4.     If Society Insurance had wanted to exclude pandemic-related losses under the Plaintiffs' policies—as many other insurers have done in other policies—it easily could have attempted to do so on the front-end with an express exclusion. Instead, Society Insurance

waited until after it collected Plaintiffs' premiums, and after a pandemic and the resulting closure orders caused catastrophic business losses to Plaintiffs, to try to limit its exposure on the back- end through its erroneous assertion that the presence of the coronavirus is not "physical loss" and therefore is not a covered cause of loss under its policies.  In fact, Society Insurance is summarily, and erroneously, refusing to cover claims under its insurance policies for any reason related to coronavirus or the resultant closure orders.

5.      The fact that the insurance industry has created specific exclusions for pandemic-related losses under similar commercial property policies undermines Society Insurance's assertion that the presence of a virus, like the coronavirus, does not cause "physical loss or damage" to property. Indeed, if a virus could never result in a "physical loss" to property, there would be no need for such an exclusion. Moreover, Society Insurance's assertions ignore the fact that their policies promised to provide coverage for losses incurred due to government actions "taken in response to dangerous physical conditions," even if those dangerous physical conditions cause damage to property at locations other than those insured under their policies.

6.      On March 17, 2020, during the term of the policies issued by Society Insurance, Illinois Governor Pritzker issued an order closing all restaurants and bars to the public in an effort to address the ongoing COVID-19 pandemic. A few days later, on March 21, 2020, Governor Pritzker ordered all "non-essential businesses" to close.  Governor Pritzker has twice extended the duration of both initial closure orders at least through May 30, 2020. The March 17 and March 21 orders, as well as the extensions of same, are hereinafter collectively referred to as the "Closure Orders."

7.      As a result of the Closure Orders, Plaintiffs have been forced to halt ordinary operations, resulting in substantial lost revenues and forcing Plaintiffs to furlough or lay off the majority of their employees.

## PARTIES AND JURISDICTION

8.      Plaintiff Gem City Fresh Mex, Inc. d/b/a Qdoba (hereinafter "Fresh Mex"), is an Illinois corporation authorized to do business in the State of Illinois and operates various Qdoba franchised restaurants throughout the State of Illinois at 415 N 32nd St, Quincy, IL 62301; 1216 W. Glen Avenue, Peoria, IL  61611; 1020-1040 W. Camp Street, East Peoria, IL  61611; 4402 16th Street, Moline, IL  61265; and, 2320 Wabash Avenue, Springfield, IL 62704.

9.      Plaintiff Gem City Custard, Inc. d/b/a Culver's (hereinafter "Gem City Custard"), is an Illinois corporation authorized to do business in the State of Illinois and operates a Culver's franchised restaurant at 2442 Broadway St, Quincy, IL 62301.

10.      Defendant Society Insurance, A Mutual Company (hereinafter "Society Insurance"), is an insurance company domiciled in the State of Wisconsin and licensed to conduct business within the State of Illinois with its principle office at the location set forth in the above caption.  Society Insurance is engaged in the business of writing and selling insurance contracts, and is licensed to conduct business in the State of Illinois and is a proper party.

11.      Pursuant to the Illinois Constitution art. VI, §9, this Court has subject matter jurisdiction over Plaintiff's claims.

12.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because they conduct business transactions in Illinois, have committed tortious acts in Illinois, and have transacted substantial business in Illinois that caused harm in Illinois.

13.     Venue is proper in Madison County because Defendant conducts business transactions in Madison County and the causes of action arose, in part, in Madison County.

<u>FACTS</u>

14.     Plaintiffs re-allege and reincorporate any and all preceding paragraphs as though fully restated herein.

15.     In exchange for substantial premiums, Society Insurance sold commercial property insurance policies promising to indemnify Plaintiffs for losses resulting from occurrences, including the "necessary suspension" of business operations at any insured location caused by a government order, during the relevant time period.   Specifically, Society sold insurance policy ROP 565291-6 to Fresh Mex which contained, applicable to this Complaint, a Businessowners Special Property Coverage Form, Society Insurance Form Number TBP2 (05-15), which Coverage Form is attached as Exhibit A to this Complaint. Society also sold insurance policy BP 18011673-1 to Gem City Custard which had the identical Businessowners Special Property Coverage Form, Society Insurance Form Number TBP2 (05-15), attached as Exhibit A.

16.     Each policy was issued to Plaintiffs at their principle place of business in Illinois.

17.     The policy is an "all risk" policy that provides broad coverage for losses caused by any cause unless expressly excluded.

5

18.     The Society Insurance policies do not exclude losses from viruses or pandemics.

Thus, the all-risk policy purchased by Plaintiffs cover losses caused by viruses, such as

COVID-19.

19.     In addition to property damage losses, Society Insurance also agreed to pay for the

actual loss of "Business Income" sustained by Plaintiffs "due to the necessary suspension"

of Plaintiffs' operations during the period of business interruption caused by "direct

physical loss of or damage to covered property" at the insured's premises, found at page 5

of 32 of Exhibit A, as follows:

> **g.  Business Income**
>   **(1)** Business Income
>     **(a)** We will pay for the actual loss of
>         Business Income you sustain due
>         to the necessary suspension of
>         your "operations" during the "period
>         of restoration". The suspension must
>         be caused by direct physical loss of
>         or damage to covered property at
>         the described premises. The loss or
>         damage must be caused by or result
>         from a Covered Cause of Loss. With

20.     With respect to business interruption losses, "suspension" means: (1) "the partial

slowdown or complete cessation of your business activities"; or (2) "that a part or all of the

described premises is rendered un-tenantable if coverage for Business Income applies."

See, Exhibit A, page 6 of 32.

21.     "Business Income" is defined in relevant part under the Policies as "Net Income

(Net Profit or Loss before income taxes) that would have been earned or incurred if no

physical loss or damage had occurred" plus "continuing necessary operating expenses

incurred." *Id.*

22.     Society Insurance also promised to "pay necessary Extra Expense" Plaintiffs incur during the period of interruption that they "would not have incurred if there had been no direct physical loss or damage to covered property at the described premises." *Id.*

23.     "Extra Expense" is defined in relevant part under the Policies as any expense incurred (1) "to avoid or minimize the suspension of business and to continue operations at the described premises"; (2) "[t]o minimize the suspension of business if [Plaintiffs] cannot continue operations"; or (3) "to [r]epair or replace any property[.]"  *Id.*, at 6 – 7.

24.     The Society Insurance Policies also include "Civil Authority" coverage, pursuant to which Society Insurance promised to pay for the loss of Business Income and necessary Extra Expense sustained by Plaintiffs "caused by action of civil authority that prohibits access" to Plaintiffs' insured premises.  *Id.*, at 7 – 8.

25.     This Civil Authority coverage is triggered when any non-excluded cause results in "damage to property other than property" at the Plaintiffs' premises, and is intended to cover losses resulting from governmental actions "taken in response to dangerous physical conditions." *Id.*

26.     The Society Insurance policy also includes coverage for a suspension of "operations" caused by "contamination."  Since "contamination" is an additional coverage under the Society Insurance policy it is a Covered Cause of Loss.   In turn, since "contamination" is a Covered Cause of Loss, "contamination" is capable of, and does, cause damage and create direct physical loss.  *Id.*, at 8 – 9.

27.     The Society Insurance Policy, in turn, defines "contamination" as a "defect, deficiency, inadequacy, or dangerous condition in (the insured's) products, merchandise

or premises," and provides coverage for actual loss of Business Income and Extra Expense when contamination "results in an action by a public health or other governmental authority that prohibits access  to the described premises or production of your product." *Id.*

28.     Plaintiffs have suffered "contamination" at their respective premises as defined under the Society Insurance policy and further meet the circumstances under which such "contamination" gives rise to coverage under that same policy.  *Id.*

29.     In addition to the other provisions of the Society Insurance policy, therefore, and for the reasons stated in the Complaint, the insureds are entitled to coverage caused by "contamination," as defined under the Society Insurance policy.

30.     Plaintiffs are further entitled to coverage for physical loss or damage at the premises of a "dependent property" or "secondary dependent property," as set forth in the Society Insurance policy.  *Id.*, at 9 – 10.

31.     The Society Insurance policy defines a "dependent property" as "property operated by others whom (the insured) depend[s] on to:  (i) Deliver materials or services to you or to others for your account (Contributing Locations.) With respect to Contributing Locations, services does not mean water, supply services, wastewater removal services, communication supply services or power supply services;  (ii) Accept your products or services   (Recipient Locations); (iii) Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or (iv) Attract customers to your business (Leader Locations).  *Id.*

32.     In turn, the Society Insurance policy defines a "secondary dependent property" "as an entity which is not owned or operated by a dependent property, which (i) Delivers materials or services to a dependent property which in turn are used by the dependent property in providing materials or services to you or  (ii) Accepts materials or services from a dependent property which in turn accepts your materials or services. A road, bridge, tunnel, waterway, airfield, pipeline, or any other similar area or structure is not a secondary dependent property. Any property which delivers any of the following services is not a secondary dependent property with respect to such services:  i. Water supply services ii. Wastewater removal services iii. Communication supply services; or iv. Power supply services.  *Id.*

33.     The Plaintiffs rely and depend on "dependent properties" and "secondary dependent properties" in the manner defined in and as set forth in the Society Insurance policy and these "dependent properties" and "secondary dependent properties," have suffered Covered Causes of Loss by, *inter alia*, suffering from "contamination" as defined in the Society Insurance policy.

34.     Plaintiffs are further entitled to coverage for the actual loss of Business Income they sustained "due to physical loss or damage at the premises of a 'dependent property' or 'secondary dependent property' caused by or resulting from any Covered Cause of Loss," all as set forth in the Society Insurance Policy.

35.     Plaintiff Fresh Mex and Defendant Society Insurance entered into a contract of indemnity, whereby Plaintiffs agreed to make cash payments to Society Insurance in exchange for Society Insurance's promise to indemnify the plaintiff for losses including, but

not limited to, business income losses at 415 N 32nd St, Quincy, IL 62301; 1216 W. Glen Avenue, Peoria, IL 61611; 1020-1040 W. Camp Street, East Peoria, IL 61611; 4402 16th Street, Moline, IL 61265; and, 2320 Wabash Avenue, Springfield, IL 62704 (hereinafter "Fresh Mex's insured premises").

36.     Plaintiff Gem City Custard and Defendant Society Insurance entered into a contract of indemnity, whereby Plaintiffs agreed to make cash payments to Society Insurance in exchange for Society Insurance's promise to indemnify the plaintiff for losses including, but not limited to, business income losses at 2442 Broadway St, Quincy, IL 62301 (hereinafter "Culver's insured premises").

37.     Fresh Mex's insured premises is a Qdoba franchised restaurant serving Mexican style cuisine to the public.

38.     Fresh Mex's regular business hours at its locations are 10:30 a.m. until 10:00 p.m., seven days a week, though some locations close at 9:00 PM on Sunday.

39.     Gem City Custard's insured premises is a Culver's franchised restaurant serving custard and other American style cuisine to the public.

40.     Gem City Custard's regular business hours is 10:00 a.m. until 10:00 p.m., seven days a week.

41.     Plaintiffs' insured premises are covered under policies issued by Society Insurance.

42.     The policies are currently in full effect, providing property, business personal property, business income and extra expense, and ordinance or law coverage.

43.     Plaintiffs faithfully paid policy premiums to Society Insurance to specifically provide all risk coverage, particularly the extension of coverage in the event of the businesses closure by order of Civil Authority and for contamination.

44.     Plaintiffs' policies do not provide exclusions due to losses, business or property, from a virus or global pandemic.

45.     Based on information and belief, Society Insurance has accepted the policy premiums with no intention of providing coverage due to direct physical loss and/or from a civil authority shutdown due to a global pandemic virus.

### A.     Plaintiffs' Losses Due to the Coronavirus Pandemic and Closure Orders.

46.     On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus—otherwise known as COVID-19—constituted a global pandemic.

47.     Emerging research on the virus and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for up to twenty-eight days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. The virus particularly lasts in humid areas below eighty-four degrees.

48.     While some rogue media outlets have called the 2019-2020 Coronavirus an exaggerated mass hysteria that will unlikely create significant physical damage, the scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage.

49.     The virus and global pandemic is physically impacting public and private property, and physical spaces in cities around the world. Any effort by Society Insurance to deny the

reality that the virus causes physical damage and loss would constitute a false and potentially fraudulent misrepresentation that could endanger policyholders and the public.

50.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

51.     It is clear that contamination of the insured premises by the Coronavirus would be a direct physical loss needing remediation to clean the surfaces of the establishment.

52.     An economist and professor at UC Berkley's Goldman School for Public Policy indicated that the challenge for state and federal leaders is to get the aid out fast enough to help the small businesses before they close for good, emptying downtowns overnight.[1]

53.     Small businesses are not inclined to take on debt just to keep their head above water, but are going to find some other way to cut costs or shut down.[2]

54.     Only about 30 percent of small and medium-sized businesses in the U.S. have policies to cover losses during unexpected shutdowns, Leonard said. What's more, those policies — in addition to the outbreak exclusions — generally require there to be property damage associated with the claim. Even eligible claims usually require a month- long waiting period, carry high deductibles and cover just a small percentage of the losses[.]"[3]

55.     Business Interruption insurance is intended to protect businesses against income losses as a result of disruptions to their operations and recognizing income losses due to

---

[1] This article is available at https://www.politico.com/states/california/story/2020/03/24/california-restaurants-plead-for-insurance-help-during-coronavirus-closures-1267873.
[2] *Id.*
[3] *Id.*

COVID-19 will help sustain America's businesses through these turbulent times, keeping their doors open, and retain employees on the payroll.[4]

56.    Sinking feelings are hitting small business owners everywhere as they realize their insurance policies will not help them weather pandemic-related closures. Few insurance policies are written to cover such losses. But their stories have bubbled up to policymakers, raising the possibility of government intervention.[5]

57.    Other states, including Massachusetts and New Jersey are considering passing bills that are designed to use the insurance industry as a conduit for a government stimulus bill.[6]

58.    In response to the pandemic and the spread of COVID-19 throughout Illinois, Governor Pritzker issued an Emergency Order on March 17, 2020 requiring all bars and restaurants to close to the public for two weeks beginning on Tuesday, March 17, 2020, on March 20, 2020, Governor Pritzker issued a second Emergency Order requiring all non-essential businesses to remain closed from March 21, 2020 until April 7, 2020.  Governor Pritzker issued subsequent Emergency Orders extending each of these closures through May 30, 2020.

59.    The continuous presence of coronavirus on or around Plaintiffs' premises has rendered the premises unsafe and unfit for the intended use and therefore caused physical property damage or loss under the Policies.

---

[4] This article is available at https://www.covid19businessguidance.com/2020/03/potential-insurance-coverage-for-coronavirus-based-business-interruption-claims.

[5] This article is available at https://www.politico.com/states/california/story/2020/03/24/california-restaurants-plead-for-insurance-help-during-coronavirus-closures-1267873.

[6] This article is available at https://boston.eater.com/2020/4/1/21201447/insurance-companies-massachusetts-business-interruption-bacterial-viral-outbreaks.

60.     The Closure Orders were issued in direct response to these dangerous physical conditions, and prohibited the public from accessing Plaintiffs' restaurants, thereby causing the necessary suspension of their operations and triggering the Civil Authority coverage under the Policies.

61.     The Closure Orders, likewise, were made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiffs' premises.

62.     The Closure Orders prohibited the public from accessing Plaintiffs' bars and restaurants, thereby causing the necessary suspension of their operations and triggering the Civil Authority coverage under the Policies.

63.     As a result of the Closure Orders, Plaintiffs have each suffered substantial Business Income losses and incurred Extra Expense.  The covered losses incurred by Plaintiffs and owed under the Policies are increasing every day.  As a result of these catastrophic losses, many of the plaintiffs have been forced to furlough their workers and may have to close some or all of their locations permanently.

64.     Following the Closure Orders, Plaintiffs each submitted claims to Society Insurance requesting coverage for their business interruption losses promised under the Policies (collectively, the "Closure Order Claims").

65.     Society Insurance has denied the Closure Order Claims, either verbally or in writing.

## CLASS DEFINITIONS

66.     Plaintiffs re-allege and incorporate the above stated paragraphs as though full restated herein.

67.     Plaintiffs bring this class action on their own behalf and on behalf of a putative Class defined as follows:

> All restaurants and bars domiciled, and conducting business, in the State of Illinois that have incurred losses and business interruptions due to the Closure Orders that are insured by Society Insurance and have either (a) made a claim through Society Insurance and been denied coverage for any and all losses due to the Closure Orders and the global pandemic of coronavirus or (b) have not made a claim for such losses under their Society Insurance policy but are similarly situated as those that have made a claim and for which claim denial is expected based on Society Insurance's practice of summarily denying such claims.

## CLASS ACTION ALLEGATIONS

68.     Plaintiffs re-allege and incorporate the above stated paragraphs as though full restated herein.

69.     Despite Society Insurance's contractual promise to pay actual loss of "Business Income" to or on behalf of its insured, Society Insurance has denied all claims made to them for any and all losses due to the Coronavirus pandemic.

70.     Plaintiffs bring claims against the Defendant on their own behalf and on behalf of the Class to order Defendant to pay all Class members' actual loss of "Business Income" in compliance with the terms of the insurance policies.

71.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to 735 ILCS 5/2-801, et seq.

72.     The requirements of 735 ILC 5/2-801 are as follows:

a.   The class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact size of the class, since such information is still coming about.

b.   There are questions of fact and law common to the class, which common questions predominate over any questions affecting only individual members. Those common questions include:

i.      Whether Society Insurance breached its duties sand obligations to the class members or breached the standard form provisions of its contracts (policies) with class members by its practice of denying any and all claims related to the current global pandemic, coronavirus;

ii.      Whether Society Insurance policies impose an obligation to pay reasonable expense for actual loss of "Business Income;"

iii.      Whether Plaintiffs and other members of the Class sustained damages as a result of Society Insurance's conduct and the proper measure of those damages.

c.   Plaintiffs can and will fairly and adequately represent and protect the interests of the class and has no interests that conflict with or are antagonistic to the interests of the class.  Plaintiffs have retained attorneys who are experienced and competent in class action litigation.  No conflict exists between Plaintiffs and class members because:

i.     All of the questions of law and fact regarding liability of Society Insurance are common to the class and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs necessarily will establish Society Insurance's liability to all class members;

ii.     Without representation provided by Plaintiffs, virtually no class member would receive legal redress or representation for their damages; and

iii.     Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs' counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

iv.     All class members have the same legal rights to, and interests in, the fair treatment by Society Insurance, and the proper interpretation and implementation of the Policy.

d. The class action is an appropriate method for the fair and efficient adjudication of the controversy given the following:

i.     Common questions of law and/or fact predominate over any individual questions that may arise, such that there would be enormous economies to the courts and the parties in litigating the common issues on a classwide instead of repetitive individual basis;

ii.     Class members' individual damages claims are too small to make individual litigation an economically viable alternative;

iii.     Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by class members;

iv.     Despite the relatively small size of individual class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation; and

v.     No unusual difficulties are likely to be encountered in the management of this class action in that all questions of law or fact to be litigated at the liability stage are common to the class.

e.   Class certification is fair and efficient because prosecution of separate actions would create a risk of adjudications with respect to individual members of the class, which may be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

73.     Class certification is appropriate under Illinois law because Society Insurance has acted on grounds generally applicable to the class.

<u>**FIRST CLAIM FOR RELIEF - DECLARATORY JUDGMENT**</u>

74.     Plaintiffs re-allege and incorporate the above stated paragraphs as though full restated herein.

75.    A declaratory judgment determining that the coverage provided under the policy will prevent the plaintiffs from being left without vital coverage acquired to ensure the survival of their business should operations cease due to a global pandemic virus and civil authorities' response.

76.    Each Policy is an insurance contract under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses.

77.    Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies.

78.    Society Insurance has arbitrarily and without justification refused to reimburse Plaintiffs for any losses incurred by Plaintiffs in connection with the covered business losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

79.    An actual case or controversy exists regarding Plaintiffs' rights and Society Insurance's obligations under the Policies to reimburse Plaintiffs for the full amount of losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

80.    Plaintiffs seek a Declaratory Judgment to declare that Plaintiffs' losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies.

81.     Plaintiffs further seek a Declaratory Judgment to declare that Society Insurance is obligated to pay Plaintiffs for the full amount of the losses incurred in connection with the covered business losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

82.     Plaintiffs ask the Court to affirm that because the policy provided by Society Insurance does not contain exclusions for a viral pandemic, the policy provides overage to Plaintiffs for any future civil authority shutdowns of restaurants in the Milwaukee and surrounding areas due to physical loss from Coronavirus contamination and that the policy provides business income coverage in the event that the coronavirus has contaminated the insured premises.

83.     Plaintiffs do not seek any determination of whether the Coronavirus is physically in the insured premises, amount of damages, or any other remedy besides the declaratory relief.

## <u>SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT</u>

84.     Plaintiffs re-allege and incorporate the above stated paragraphs as though full restated herein.

85.     Each Policy is an insurance contract under which Society Insurance was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses.

86.     Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies, and yet Society

Insurance has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

87.     Defendant Society Insurance and its agents have unreasonably and in bad faith breached the contract of insurance between the parties.

88.     By denying coverage for any business losses incurred by Plaintiffs in connection with the Closure Orders and the COVID-19 pandemic, Society Insurance has breached its coverage obligations under the Policies.

89.     As a result of Society Insurance's breach of the Policies, Plaintiffs have sustained substantial compensatory damages for which Society Insurance is liable, in an amount to be established at trial.

<u>**THIRD CLAIM – BAD FAITH**</u>

90.     Plaintiffs re-allege and incorporate the above stated paragraphs as though full restated herein.

91.     Defendant Society Insurance and its agents have acted in an arbitrary and intentional manner and have refused to pay the proceeds rightfully due to Plaintiffs and the members of the Class. This refusal is unreasonable, unjustified, has no basis in fact or law and constitutes bad faith.

92.     Society Insurance's bad faith conduct consists of, but is not limited to:

      a.   Failing to fully, fairly, and promptly investigate Plaintiffs' claims;

      b.   Unreasonably denying and/or withholding payments under the policies;

      c.   Engaging in a pattern and practice of illicit claim practices; and

      d.   Failure to provide a reasonable explanation and accurate explanation of the

basis of the denials.

93.     As a result of Society Insurance's bad faith, Plaintiffs have sustained substantial compensatory damages for which Society Insurance is liable, in an amount to be established at trial.

**WHEREFORE**, Plaintiffs demand judgment against the Defendant as follows:

a.   Certifying the Class, as set forth in the complaint, and appointing the individual Plaintiffs herein as Class representatives;

b.   Declaring that the Defendant has breached the terms of their insurance policies and awarding unpaid benefits to the Plaintiffs and members of the Class, as well as awarding injunctive and declaratory relief to prevent Defendant's continuing action detailed herein in violation of Illinois law;

c.   Ordering the Defendant to issue unpaid "Business Income" and "Extra Expenses" to the Plaintiffs and the members of the Class, with statutory interest;

d.   Awarding costs, disbursements, reasonable attorney's fees; and

e.   Granting such other relief as the Court deems just and equitable.

Dated: May 1, 2020                              Respectfully submitted,

                                                /s/ Tor A. Hoerman
                                                Tor A. Hoerman #6229439
                                                Kenneth Brennan #6239037
                                                TorHoerman Law LLC
                                                210 South Main Street
                                                Edwardsville, IL 62025
                                                Ph: 618-656-4400
                                                E: tor@thlawyer.com
                                                E: kbrennan@thlawyer.com

WRIGHT & SCHULTE, LLC
*/s/ Richard W. Schulte*
Richard W. Schulte (Ohio #0066031)
865 South Dixie Drive
Vandalia, Ohio 45377
(937)  435-7500
(937) 435-7511 (fax)
rschulte@yourlegalhelp.com
(*Pro Hac Vice* to be applied for)

HILLIARD MARTINEZ GONZALES, LLP
*/s/ Robert C. Hilliard*
Robert C. Hilliard (Texas #09677700)
Rudy Gonzales
Marion M. Reilly
R. Allan Pixton
Alex Hilliard
719 S. Shoreline Blvd.
Corpus Christi, TX 78411
(361) 882-1612
(361) 882-3015 (fax)
bobh@hmglawfirm.com
marion@hmglawfirm.com
*HMGService@hmglawfirm.com
***Service by e-mail to this address only.***
(*Pro Hac Vice* to be applied for)

URBAN & TAYLOR SC
*/s/ Jay A. Urban*
Jay A. Urban (Wisconsin #1018098)
Urban & Taylor Law Building
4701 N Port Washington Road
Milwaukee, WI 53212
(414) 906-1700
(414) 906-5333 (fax)
jurban@wisconsininjury.com
(*Pro Hac Vice* to be applied for)
*Attorneys for Plaintiffs*